{¶ 30} I concur with the majority as to its disposition of this case. I write separately only to provide some additional analysis.
 {¶ 31} Appellant filed a Motion to Terminate Guardianship of her child Brenden, d.o.b. July 17, 2000. Brenden's guardian of his person and estate were and are his paternal grandmother and her husband (Juanita and Douglas Smith). Appellant had agreed to the guardianship approximately one year and five months prior to her Motion to Terminate. The initial application for guardianship alleged that Brenden's parents were ". . . unsuitable to have custody and tuition of him . . ." and sought guardianship until July 17, 2018, Brenden's eighteenth birthday. The trial court explained to appellant, and to the father of the child, at the time of the guardianship proceeding that the guardians "would have the authority to deal with Brenden's physical care, medical and school issues, and to control their visitation with Brenden." (Entry of February 19, 2003.)
 {¶ 32} R.C. 2111.46 provides in part that "[w]hen a guardian has been appointed for a minor before such minor is over fourteen years of age, such guardian's power shall continue until the ward arrives at the age of majority, unless removed for good cause
or unless such ward selects another suitable guardian." (Emphasis added)
 {¶ 33} The trial court found that the appellant was required to satisfy a two-part test before it would terminate the guardianship. Appellant was required to prove a change in circumstances of the ward or guardian and that a change of custody was in Brenden's best interest. The trial court adopted this analysis of "good cause shown" from the case of In reGuardianship of Sanders (1997), 118 Ohio App. 3d 606,693 N.E.2d 1101. The Sanders court found that a guardian of a ward is given custody of the ward. See R.C. 2111.06 which provides that "[a] guardian of the person shall have the custody and provide for the maintenance of the ward, and if the ward is a minor, such guardian shall also provide for the education of such ward." (Emphasis added) Therefore, issues of guardianship and custody are "inextricably intertwined." Sanders at p. 615 quoting Inre Guardianship of Wonderly (1981), 67 Ohio St.2d 178, 183, 423, N.E.2d 420, 424.
 {¶ 34} The Sanders court found that if there were competent, credible evidence to show that a parent had voluntarily relinquished his/her right to custody by agreeing to a permanent guardianship then the parent had "surrendered [his/her] paramount right as a natural parent to preferential consideration in a subsequent custody determination." Sanders
at pg. 615. The Sanders court concluded that, therefore, the parent was required to satisfy the two part test as set forth above and as found in R.C. 3109.04 (E)(1)(a).[2]
 {¶ 35} Appellant argues that she only temporarily relinquished her custody rights and therefore appellees must prove she is unsuitable or appellant shall get custody of Brenden and the guardianship shall be terminated. In fact, the Ohio Supreme Court in In re Hockstok, 98 Ohio St.3d 238, 781, N.E.2d 971, 2002-Ohio-7208 says that "a finding of parental unsuitability has been recognized by this court as a necessary first step in child custody proceedings between a natural parent and nonparent." Id. at paragraph 18.
 {¶ 36} This first step is forfeited, however, if the parent has forfeited his/her paramount right to custody by contract, abandonment, or by becoming totally unable to care for and support the child. See In re Perales (1997), 52 Ohio St.2d 89,369 N.E.2d 1047. The trial court in the case sub judice found that appellant forfeited her right to custody of Brenden when she consented to the initial establishment of the guardianship. I find that there was competent, credible evidence to support the finding of the trial court that appellant "surrendered her paramount right to custody by agreeing to a permanent guardianship and voluntarily relinquishing her custody rights." (May 3, 2005, Judgment Entry of trial court.) It should be noted at this point that the trial court also found that "[a]t the time the guardianship was established, for whatever reasons, [appellant] was not able to adequately parent her child." This was not a case wherein the guardianship was explicitly stated to be temporary, and it was not a case where appellant's circumstances or problems at the time of the guardianship were foreseen to be of a specific duration, i.e. tour of military duty, recovery from a surgical procedure, etc.
 {¶ 37} When deciding whether a parent has contracted away his/her paramount right to custody, the cases have looked to whether the parent contracted away his/her right to custody or whether the contract/agreement was only for a temporary grant of custody. Care needs to be exercised so as not to confuse the concept of legal custody with that of permanent custody. Appellant's brief seems to occasionally confuse these legal terms which have specific statutory definitions. "Legal custody" is defined by R.C. 2151.011(B)(19) as "a legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities." "Permanent custody" is defined in R.C. 2151.011 (B)(30) as "a legal status that vests in a public children services agency or a private child placing agency, all parental rights, duties, and obligations, including the right to consent to adoption, and divests the natural parents or adoptive parents of all parental rights, privileges, and obligations, including all residual rights and obligations."
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Holmes County Court of Common Pleas is affirmed. Costs assessed to mother.
[2] I shall not discuss whether 3109.04 is the appropriate guidance in a termination of guardianship case. It is generally the statute used in domestic relations cases and in appropriate juvenile court cases. R.C. 2151.23 (F)(1). The issue of its applicability in a probate case is not squarely before us at this time.